Before we get started, I'm going to ask Judge Chen to recognize me for a motion. So recognized. Thank you. Would you please stand, Nautica? I move the admission of Nautica Gupta, who is a member of the Bar and in good standing in the highest courts of Delaware and the United States Court of Appeals for the Third Circuit. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. And I'd just like to say, you know, for all of us, I think this is a bittersweet time of the year, because one of the good things, I suppose, about the way our law court program runs is that we have turnover every year or two, and new people come in and our families continue to grow. But of course, in this case, many like Nautica go on to bigger and better things. And for Nautica, that includes not only her professional life, but her personal life and her upcoming wedding, finally, to Carlisle. But the bad news is that this also means that they leave us. And it's particularly hard when the clerk is Nautica, who's been such a real joy to but a well-grounded lawyer and leader. And she will certainly be missed by all of us. So please be sworn in. Oh, I'm sorry. I'm sorry. Oh, my goodness. Yes. Chief, the court will now consider your motion. Yes, I certainly agree. Okay. Well, I agree. I have every confidence that Ms. Gupta will be an excellent addition to our bar. By a unanimous vote, the court grants the chief's motion. Thank you. Yeah. First case for argument this morning is 151804, Vocal Tag v. Adgees, Odom, whatever, Mr. Kastenius. Good morning. Good morning. Thank you, Your Honor. And may it please the court. The direction I propose to go this morning is as follows. I propose to address three issues. Issue one is the district court's error by limiting the corresponding structure for sensing chewing actions to sound sensors without also including motion sensors, which were expressly disclosed in the specifications. That's issue one. Issue two, which also involves the 481 patent, as the previous issue did, and that's also known in the brief sometimes colloquially as the rumination patent, is the district court's failure to include the figure six algorithm as corresponding structure for the data processor when it is set forth explicitly that that is the function of the, or that is the structure of the algorithm of the data processor, as well as its resolving of factual disputes on summary judgment. And finally, the third issue that I propose to address, and I take them in this order, has to do with the 149 or estrous patent, which is the error in claim construction by requiring attenuation of the signal quote from the acceleration sensor rather than attenuation taking place within the microprocessor, and secondly, adding, the district court's adding of an unclaimed proportionality requirements to the claims. So unless the court would like me to go in a different direction, I'll proceed in that order. Starting with the district court's error on the rumination patent for not expanding the corresponding structure for sensing chewing actions to motion sensors as well as sound sensors, the specification is quite clear. The objects and brief summary of the present invention at A107, columns two, lines 44 to sound sensors, chewing actions could be sensed by, and I'm quoting from the spec here, sensors for sensing the motions of the animal's lower jaw. Now that is enough, quite enough, to show that the motion sensors is an alternative to sound sensors. Why wouldn't it be limited to sensors for sensing the motion of the lower jaw as opposed to all motion sensors? Well, the motion sensors are, that's what the motion sensors are doing in this context. They are sensing the motion, the chewing motion. They don't have to be applied to the lower jaw. They could be very well on an ear tip. Why not? The corresponding structure is applied to the lower jaw. If we're supposed to look to the specification to identify the corresponding structure, wouldn't it at least be limited to sensors that are on the lower jaw? Well, it doesn't say, Judge Stolt, keep in mind, the specification doesn't say the sensors are on the lower jaw. They are sensors for sensing the motions of the animal's lower jaw. So that's, and that's what the sensors are, even the sound sensors are trying to get at the chewing action. I'm sorry, I thought, and I can go back to the spec now, that the specification deals with sensors attached to the jaw. Is that not what the specification? There are embodiments within the specification that show sensors attached to the jaw. What I'm pointing out to you though is that the specification is not so limited. How do we know that? Precisely because of the language that I've just read to you. It says, for example, chewing actions could be sensed by sensors for sensing the motions of the animal's lower jaw. Under this court's decisions in cases like Midco versus Electa, Linear, and S3, this disclosure is enough. This court has been, in the words of the elected decision, quite generous in finding corresponding structure when the specification contains a generic reference to a known structure. And here, in addition to what the specification tells us, the record also tells us that all of the experts agreed that motion sensors, accelerometers in particular, were well-known generally, and well-known particularly in this art since the late 1990s. And if you'd like sites for that proposition, that's at A40 Twatt, excuse me, let me try that in English, A425, that's Sidman, A1627, which is Stevenson, and those are Agassiz experts, and then there's Shaver, SCR's expert, at A1874 and A3288. Now, even though nothing more specific than motion sensors is required by this court's law, the 481 patent also makes clear to a person of ordinary skill that a microswitch is a specific kind of motion sensor. Now, our friends on the other side tell us that, well, that microswitch is disclosed in the specification as limited to what's called a bolus regurgitation sensor. I apologize, this is what the patent is about. But that is not the point. The point is that that shows that a person of ordinary skill would understand at the time of this patent that a microswitch would be one of those sensors. And if there's any doubt left after that, the claims themselves give the answer. Dependent Claim 2, which says at least one sensor is a sound sensor, ends up being coextensive with Independent Claim 1, which the district court limited to sound sensors. And more to the point, Dependent Claims 5 and 6, particularly 6, again shows that the bolus sensor, which is one of those sensors for sensing motion that is claimed in Independent Claim 1, is a microswitch, a motion sensor. So what that tells us is that Claim 2 tells us that Claim 1 is not limited to sound sensors, and Claim 6 tells us that it must include microswitches, which are a type of motion sensor. Let me turn to the second issue, if I can. This is the structure corresponding to the 481 patent's data processor. The district court, after initially hearing from both parties that Figure 6, which is a flowchart algorithm set forth in the patent, was part of the corresponding structure, ruled after Agus retreated from that position that Figure 6 was not a corresponding structure. That was also a legal error. Figures 8 and 11, those are flowcharts, and they show that at some point in those flowcharts there's a calculation of the time of each chew, and also the number of chews per time interval. Right? Right. And then Claim, or not Claim, Figure 6, I didn't see a box in that flowchart for measuring the time of each chew. I saw something that is probably calculating the number of chews per particular time interval, but I didn't see a box for measuring the time of each chew as recited in the claims. Well, as interpreted by the district court, and that's actually part of the district court's claim construction error here, Your Honor, Judge Chint, when the court, I think it's almost fair to say that what the court did is it inverted the Section 112.6 analysis here. It said, well, the plain language means time of chew must be, and in the language, let's focus on the language, it is a data processor accumulating. That's just collecting. OK? Both the time of each of said sensed chewing action and the number of said chewing actions per unit time interval for determining the chewing rhythm of the animal. So what does the time of each chewing action mean here in this context? The district court and our friends say, well, it means that there must be a specific stopwatch time, or maybe even a time stamp on each chew. But the specification, in particular, Figure 6 and the description of Figure 6, tells us otherwise. It starts by taking a three-second sample, and it's asking whether there is at least one chew or two to four chews. These are boxes 20, 21, and 22 in the flow chart. So if you take a three-second sample, let's say it's midnight to three seconds after midnight, you are detecting one chew or two to four chews. You are detecting the time of each of said sensed chewing actions. You know that each of those chewing actions is taking place within that three-second interval, if that's what is being recorded. Time of said chewing actions, each of said sensed chewing actions, doesn't mean that it has to be a time stamp, which seems to be what the district court thought. And ultimately... So the time of each of said chewing actions? Time of each of said sensed chewing actions. I mean, I don't know, it struck me as just plainly meaning measuring the time it takes for each chew action to take place. You're telling me that's not... I'm telling you that that's not the limit of the claim language. And the specification, which has to be consulted in understanding what a claim means, is clearly linked to this. Remember that this... Would you agree that Figures 8 and 11, those flow charts, they do indeed have a box that provides that in those processes you are going to measure the amount of time each chewing action... That's absolutely the case. Our point is that the claims are not so limited. And here, I think we need to come back to the 112.6 precedent of this court. The term that this court's decisions use is clearly links or associates. Now, what is this limitation? This is a limitation for a data processor. The data processor is described specifically in the specification as being represented... The algorithm is Figure 6 and Figure 8. And you mentioned Figure 11. I think Figure 11, the description of the figure, is much the same. Well, actually, Figure 11, if you look at Column 3, does not say that it is illustrating the operation of the data processor. But Figure 6 and 8 both do that. Figure 8, in fact, is just an alternative way of doing what Figure 6 does. Mr. Castaneous, I'm sorry. You're bleeding into a... You're losing time, so I just want to quickly get to a couple other issues. I see a couple broader issues. One was, it's not clear to me that the accused product is measuring the time of each chewing action. So that is a limitation in the claim. And secondly, perhaps another fundamental point is that I didn't see anywhere in the record below where your side was arguing by walking through any of the figures, 6, 8, or 11, those algorithms contained therein and trying to match them up against whatever algorithm the Cal Manager is using in the accused product. And isn't that a fatal defect in your case on infringement? The answer to your second question is no. Now let me go back and explain the answer to your first question, which is the time of each chew. Okay. Well, now I'm stuck on my second question.  On your second question... You're saying it's okay for the plaintiff to not put on any case comparing the algorithms disclosed in your specification that correspond to the means plus function limitations to whatever structures slash algorithms in the accused product in order to make your case for infringement? I was not saying that, and I wouldn't say it here, and I'm not telling you that that's what the record is here. In fact, what I was going to tell you was that Dr. Anas Hansley actually does, in his declaration, go through how the statistical approach, which is set forth in Figure 6 of the specification, mirrors the statistical approach that's taken in the accused product. What page is that on? I think where it goes through Figure 6. I don't know that I can tell you that he went exactly through Figure 6, but... Well, I think he needs to go through one of these three figures. The problem here, of course, Judge Chin, is that we were... The markment came at the same time as the summary judgment decision, so we didn't know until we had the ruling against us that the judge was going to rule out Claim 6. I'm doing the same thing. Figure 6. Was the opposing counsel, were they arguing that Figure 6 shouldn't be included? They initially argued that it should be included, and then they turned tail, and in footnote 6 of their summary judgment motion at A1525, decided that Figure 6 should not be included for the reasons that Judge Chin and I have been discussing, which we say was the district court's error here. I think the reason that they retreated from that position is that Figure 6 does do the same sort of statistical sampling that the... I shouldn't call it sampling, but the statistical analysis that the censure product, which is accused, has done. And, Judge Chin, so that I don't bleed out all of my time here, I'll come back with the specific citations on rebuttal with regard to Dr. Anacondle. But let me just turn, if I can, I think I'm already into my rebuttal, unfortunately, but let me just make two points very quickly with regard to the estrous patent, the 149 patent. The two errors committed by the district court on claim construction were, as I outlined earlier, one, requiring reducing the energy level of the signal from the acceleration sensor. This is all done in the microprocessor. From the acceleration signal. The acceleration signal is what the claims say. It's not from the acceleration sensor. All of the work is done in the microprocessor. That was actually part of what Agus's proposed construction, which the district court said it adopted, included. But we believe that that was error. The second one is the proportionality requirement. You can't tease a proportionality requirement out of this claim language. The only reference that Agus has come up with from the specification is with regard to A117, column 4, lines 21 to 22, which describes an alternative where it expressly uses the term may with regard to attenuating radiation proportion to the amount of liquid. If I just conclude very quickly, the court should reverse, vacate the grants of summary judgment, as well as the grant of summary judgment of no willful infringement, which was decided under the now overruled Seagate regime. In this case, page 848.16, we have exactly the sort of evidence of piracy that Chief Justice Roberts referred to in the HALO and PULSE decisions. Thank you very much. Will we store two minutes of your time? May it please the court. In order for this court to overturn the district court's finding on the 481 patent, four specific findings would have to be overruled. The structure being limited to sound sensor, that an algorithm disclosed in the patent was used by the accused device, that the accused device accumulates and senses the time of each chew, and that the accused device counts each chew per time interval. I'm just curious. A lot of materials with regard to your product are marked confidential in the briefs. So given that we have to write an opinion, how do we work our way around that? Your Honor, that's a very good question. I believe that the way the district court did it, and I think it would be sufficient for the public to understand what's going on here, is to simply describe our particular algorithms as statistical functions in the public opinion. The specific statistical algorithm that my client discovered is a very valuable trade secret. We produced our source code right at the beginning of the case. That is usually the crown jewel of a company. It's a crown jewel of ours. And we think that the specific advantage our product has over the rest of the world would be disclosed if our particular algorithms are disclosed. If we made reference to those six-letter unpronounceable words in an opinion, would that be inappropriate? I think if you used the difference in acceleration and IQR, that would be okay without saying specifically what those calculations were. None of the district court's findings on the 481 are in any way incorrect. And I can start backwards, and Judge Chen, you asked a question about does the August sensor measure time. There never was a dispute as to what measure time or sense time means. Early in the case, in the infringement analysis, SCR defined the term as sensing the length of time for each chewing action. The figures 8 and figures 11, which are clearly embodiments of the data processor, talk about measuring time. And it's not only measuring time, it's measuring time within a hundredth of a second. There is no dispute that we don't do that. We can't do that. That is fatal in and of itself to the claim. Additionally fatal to the claim is even if figure 6 counted as an algorithm, there's no evidence in the record, none whatsoever, that we performed figure 6. None was offered by any expert, and the experts had our – Mr. Kastanis is going to come up in a few minutes and point to something in the joint appendix. I know you don't know what numbers in his head, but – The record for plaintiffs is up until summary judgment they denied that these were means plus function claims. So there's no evidence in the record as to what structures, one of skill and the art, would glean from the disclosure or what algorithms counted. Indeed, evidence was people of skill and the art would know all different algorithms. There's no evidence of figure 6, and figure 6, as the district court correctly found, does not talk about measuring time. It's quite important here that – I'm just curious. What about block 23B of figure 6 where in the spec it talks about how that clock – if you identify there's two to four chews in the three-second sample, then 23B kicks in to measure the times? Block 23B is for time of total chew – that rumination is occurring. So the rumination time register in block 28 flows to 23B. So the data processor accumulates the total time of rumination. That's the ultimate output to the farmer to say the cow has been ruminating for X number of minutes during the day. But there's nothing in figure 6 that shows how long each chew is taking, the duration of each chew. And both the time of each chew and – I want to make sure I understand it. The specification talks about if you conclude that there are a certain number of chews within the sample, then you go over to clock 23B, which measures the times. I think that's the claim from the spec, and now I don't quite understand what that means when it comes to measuring the times. There are two times that are being measured. There's the time of each chew, so the time between 0.7 and 1.43 seconds. Then what the ultimate result is – so if there's a yes, that is added to what's called the rumination register. And that tells you how many minutes during the day the cow is ruminating. It's important to determine the health of the cow, how long during the day it's ruminating. So there are two time measures, and the set time memory, I believe 23B, is for the ultimate time chewed during the day. There's no measurement in 6 of time of each chew. And the fact that there isn't a measurement of time of each chew between the two numbers shows that it's not an embodiment. There was some discussion, and I should add, as the district court found, we don't count each chew. That there's no way for our system to say chew at a number, chew at a number. So we can't find the N that figure 8 and figure 11 have, and figure 6 implicitly has, of how many chews there are per given time period. That was a finding of the district court. I don't even know if it's challenged on appeal, but that in and of itself would be fatal. Again, the claim requires as the function, not as the means for the function, but as the function, both the time of each chew and the count of each chew. Does your product measure calculate the number of chews per sample per time period? No, it does not. What it does is it gets all the motion, and after doing the calculation of those two almost unpronounceable ratios, well, those two unpronounceable statistical calculations, looks for, it has a motion number for each minute. And then those are put in yet another algorithm in the server. There's no counting of chews at all. It's not the way our system works. There was a brief argument about microswitches. Microswitches are not linked to counting chews, but that's irrelevant. Microswitches are not in the accused device. As the district court found, there's no evidence of that at all. What about the specifications disclosure that chewing actions could be sensed by sensors for sensing the motions of the animal's lower jaw? Did the district court err by not including that as corresponding structure? It did not. The district court did not err. And the reason it did not err is as that is written, that is nothing more than a functional description. Chewing of a cow is the movement of the jaw up and down. So something more, some life would have to be breathed into that description for it to fall into the case law cited by SCR as to what one of skill in the art would view as disclosed as a structure. So you're saying the reference to motion sensor in the specification wasn't good enough? Not only was it not good enough. Well, yes, I'm saying that absent any more evidence in the record, according to this court's case law. What do you expect? You think it needs to say something like accelerometer or something like that? No. It would have to say what the structures for sensing jaw motions were. When this court finds that a generic disclosure is sufficient, what it looks for is testimony of one of skill in the art as to what they would see. There was no argument that one of skill in the art would sense any particular jaw sensors being disclosed. And in fact, that was shied away from because we put in prior art that the jaw sensors were known and would invalidate the patent. What if it had said jaw sensors for sensing the motion? Or if it had said accelerometers on the jaw, near the jaw? I mean, at what point is there corresponding structure? I think your argument is that to the extent the specification talks about motion sensors or microswitches, it's in the context of something else. And this disclosure here is simply too functional to be corresponding structure and provide the definiteness required for corresponding structure. That is what we're saying. Because had there been any evidence that particularly known motion sensors at the time were disclosed or known to one of skill in the art to have been disclosed, that would be sufficient. As the med instrumentation case said, this court has been generous in finding structures disclosed, but there has to be some evidence in the record. And simply saying sensors for sensing motion would do it is incorrect. More importantly, on A1972, Dr. Annis Hansley disclaimed that at the time of this patent accelerometers were known. While he did this in the context of opposing our motion, our argument on the 149 patent, but he said acceleration sensors were neither well-known nor was their use in a wide variety of motion sensing application of common knowledge as of January 19, 2005. Of course, the 481 patent is from 2001. So their own expert denies what this court requires to broaden what structure disclosed is. He said one of skill in the art would not know accelerometers in terms of measuring animal behavior. What's the site of that? A1972. There's an argument on figure six, and I'm sorry to be jumping around, that we somehow argued it or conceded it. The history is in the background of our experts' invalidity position, and simply as a background, not as part of any analysis. In that report, he mentioned figure six as a structure that was disclosed. By the time of his next report one month later and several months before summary judgment, he said, I err in my initial disclosure. We never made that. There's no judicial estoppel. There was no argument. There was no concession of that other than there was an error in our original expert report, which was corrected timely. To the extent that there's any argument that this court somehow did something unfair by not having a claim construction, an early scheduling boarder said there will be no separate claim construction consistent with the procedures in the Western District of Wisconsin. Plaintiffs chose the Western District of Wisconsin. If parties tell the court or make a motion for a claim construction hearing, the court can consider that no such motion was made. The district court did nothing wrong. Briefly, in my last two minutes, on attenuate the energy level of an acceleration signal, the district court got it completely right. The language was added to the claim after numerous office actions with the patent office to specifically add that requirement that the energy level of an acceleration signal must be attenuated. There never was a claim construction argument made by plaintiffs in the summary judgment proceedings, and the definitions were all over the place. None addressed the particular language that SCR itself added to the language. I didn't see anything in the prosecution history, though, that said proportionality, that you will decrease, reduce, attenuate the energy level of the acceleration signal in proportion to the strength of the indication that the cow is eating. That isn't in the prosecution history, Your Honor. What the district court found correctly was the language of the claim itself, attenuation as the indication of eating is stronger. But couldn't that be just something that when it reaches a certain point and there's an indication that it's strong enough, then you have attenuation? There's nothing about proportionality in that claim language. What the district court read was, as it is stronger, read that grammar that way. It is consistent with the specification which attenuates more as the head of the animal is further down. The significant point, and one which doesn't seem to be rebutted but was argued below on appeal, was we don't reduce any values or we don't do anything that's arguably attenuation  The proportionality, while the court put it in the opinion, wasn't necessary for the finding. The simple fact is our statistical calculations are done all the time, whether there's an indication of eating or not an indication of eating. While proportionality might give yet one more reason why August doesn't infringe, it wasn't necessary to the finding, but it is consistent with the grammar of the claim language, and that was the basis of the court's decision. Thank you. Thank you. I'll be as brief as I can. Judge Chen, the answer to your question, as I said earlier without a specific citation, was the Annes-Hansley report, which starts at A1395. The most important parts are at A1407 and A1415. And what you'll see, and actually between those pages as well, what you'll see is a detailed description of how the censor-accused system works, as well as a conclusion at page A1407 that describes how the system is covered by claim one of the rumination patent, which states a censor detects chewing actions in terms of the, quote, number of chewing actions are known for each minute, close parent, and, quote, number of chewing actions per predetermined time interval. Parent chewing rate is detected within a band of chewing rates and is known in chews per second for a given minute. And that language was not only cited but quoted in our briefs as well. With regard to a couple of other points very quickly, as I said in our opening remarks, the court's precedents require a clear link or association between the claim language and the specification. We've got that in spades here because the data processor is what is at stake with regard to the 481 patent, and the data processor is precisely what's described in Figure 6. I heard my friend on the other side say that censors for sensing motion are purely functional. The record is quite to the contrary. The term motion censors as well as acceleration censors were described as well-known by not only our expert but their expert as well. In fact, if you look at page A1972, the page site, the pin site that my friend gave you, Judge Chin, you'll see that there's at best a dispute effect with regard to whether they were known in the art, and that's inappropriate for summary judgment. Or was that site really talking about accelerometers and not necessarily just broadly motion censors? It really was talking about accelerometers. I'd just point out with regard to Agassiz switching its positions with regard to whether Claim 6 was included, its claim construction that it gave to the court as an attachment to its summary judgment motion included Figure 6. That was never changed. With regard to the comment on prosecution of the estrous patent, the examiner's reasons for allowance, I think, give the lie to the claim that there was some sort of disavowal or some kind of abandonment of the subject matter here. Quite the contrary, one of the things that the examiner said there was that one of the reasons for allowance was that the new invention neutralizes accumulated motion data, which is what attenuation is talking about. So what's your best understanding of the claim term? Because if the claim says one thing goes down as another thing goes up, that sort of suggests maybe as you're fine-tuning one thing, you'll fine-tune one thing down if you see one thing increasing. Of course, the whole point of this is to try to minimize or eliminate noise, effectively the eating data out of this, and that can be done in a wide variety of ways. Attenuate simply means reduce, and more importantly, this Claim 12 is the claim at stake here. It's at least one microprocessor for attenuating the energy level of the acceleration signal as the indication of eating is stronger. It just means reducing it. It doesn't mean reducing it proportionally. It could be done statistically. It could be done, as the specification says at column three, by a root mean square. You've been more than indulgent with your time. Thank you very much. Thank you. We thank both sides on the case.